Victor Hugo **SALDAÑO**, Petitioner,

v.

Janie **COCKRELL**, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

Civil Action No. 1:02cv217.

United States District Court,
E.D. Texas,
Beaumont Division.

June 12, 2003.

Stanley George Schneider, Thomas D. Moran of Schneider & McKinney, Houston, TX, for Petitioner.

John Anthony Stride, Collin County District Attorney Office, McKinney, TX, for Intervenor–Plaintiff.

Julie Caruthers Parsley, Attorney General's Office, Austin, TX, for Respondent.

John Anthony Stride, Collin County District Attorney Office, McKinney, TX, for Tom O'Connell and Matthew Paul, movants.

Scott J. Atlas, Sarah Beth Landau of Vinson & Elkins, Houston, TX, for Government of the Republic of Argentina.

## MEMORANDUM OPINION

SCHELL, District Judge.

Victor Hugo Saldaño ("Saldaño"), an inmate confined in the Texas Department of

Criminal Justice, Institutional Division, filed an amended petition for a writ of *habeas corpus* on August 5, 2002. Saldaño challenged his death sentence imposed in the 199th Judicial District Court of Collin County, Texas in cause No. 199–80049–96, styled *The State of Texas vs. Victor Hugo Saldaño, a/k/a Victor Rodriguez*. For the reasons set forth below, the court finds that the amended petition is well-taken and it will be granted.

**Factual and procedural background**

On November 20, 1995, Saldaño kidnapped and killed Paul King. King's car was parked in a parking lot by a grocery store in Plano, Texas. Saldaño and an accomplice forced King into his car and drove to a secluded country road. Saldaño shot King five times, took his watch and wallet, and left his body by the roadside. The kidnappers drove King's car for a short time before abandoning it. Saldaño was arrested within a few hours of the killing.

On January 24, 1996, Saldaño was indicted for capital murder, and on July 11, 1996, he was convicted by a jury of the charge. The trial court subsequently conducted a punishment hearing. Under Texas law, the jury is required to determine whether there is a probability that the defendant will commit acts of criminal violence that will pose a continuing threat to society. To establish this element, the State of Texas, represented by the Collin County Criminal District Attorney ("District Attorney"), presented the expert testimony of Dr. Walter Quijano.[1]

Quijano testified that in his opinion, there was a probability that Saldaño would be dangerous to society in the future. Asked to explain the basis of his opinion,

Quijano said that his opinion was based on an analysis of 24 factors. One of the factors that Quijano used to predict future dangerousness was race and ethnicity. He testified that Saldaño's Hispanic ethnicity increased the likelihood that he would be a danger in the future. Quijano explained that Hispanics were over-represented in the Texas prison system, and to him this fact suggested a correlation between ethnicity and future dangerousness. Quijano admitted that other factors, such as education and economic status, are at least partly responsible for that over-representation. He testified that no particular weight should be given to any factor and that the jurors should make the determination for themselves on what weight to give each factor.

Saldaño's counsel did not object to Quijano's testimony. Instead, he cross-examined Quijano about the validity of race and ethnicity as a factor and whether Saldaño, an Argentine national, should be categorized as Hispanic. He also offered contrary expert witness testimony discounting the relative value of race and ethnicity as a predictive factor.

In his closing arguments, the prosecutor did not emphasize Saldaño's race and ethnicity, although he did tell the jury to rely on the 24 factors about which Dr. Quijano had testified:

> Our expert told you [that there was a probability that Saldaño would be dangerous in the future] and you can have confidence in his opinion beyond a reasonable doubt because of his qualifications and his background, and his expertise.

---

1. Under Texas law, the jury was free to consider the evidence it heard in the guilt/innocence phase of the trial in determining Saldaño's future dangerousness. Other evidence on the issue included the random nature and needless cruelty of the crime, Saldaño's lack of remorse and his attempted aggravated robbery five days before the murder.

Consider what he did tell you. He didn't tell you this man is a danger—I mean, he did tell you that, but how did he get there? This is how he told you to get there.

He gave you factors or markers to go through, 24 of them, outlining them. And he wants you to put in what you've heard and learned about this offense and the defendant, [and] plug them into that formula. This is a formula recognized in the field as to what would constitute dangerousness in a person. You do the work and plug it in.

On July 15, 1996, the jury found that there was a probability that Saldaño would commit criminal acts of violence that would constitute a continuing threat to society, and it further found that there were not sufficient mitigating circumstances to warrant the imposition of a sentence of life imprisonment rather than death. Accordingly, the trial judge sentenced him to death.

On appeal, Saldaño claimed that he was denied due process of law because his race and ethnic background were improperly used to support the finding of "future dangerousness" in the punishment phase of his trial. The State of Texas, represented at this point by the District Attorney and the Texas State Prosecuting Attorney ("Prosecuting Attorney"), contended that this claim was not preserved for review because Saldaño did not object to Dr. Quijano's testimony at trial. On September 15, 1999, the Texas Court of Criminal Appeals affirmed Saldaño's conviction and sentence.[2] It refused to consider the denial of due process claim because Saldaño's

trial counsel had not objected to Quijano's testimony during the trial. Saldaño then petitioned the Supreme Court of the United States for a writ of *certiorari*, and filed a petition for a writ of *habeas corpus* in this court.

At this point, the Texas Attorney General ("Attorney General") replaced the Prosecuting Attorney as counsel for the State of Texas. In its response to the petition for writ of *certiorari*, the State confessed error on Saldaño's claim. The Supreme Court granted the writ of *certiorari*, vacated the Texas Court of Criminal Appeals' judgment and remanded the case to that court for further consideration in light of the confession of error. *Saldaño v. Texas*, 530 U.S. 1212, 120 S.Ct. 2214, 147 L.Ed.2d 246 (2000). In light of this ruling, Saldaño voluntarily dismissed his federal *habeas corpus* petition.

After the Supreme Court's ruling, four other death-row inmates, each of whom had been sentenced to death as a result of punishment phase hearings in which Quijano gave substantially similar testimony, petitioned the federal courts for new sentencing hearings. In each of those four cases, the Respondent, represented by the Attorney General, confessed error and in each case the federal court granted relief.[3]

On remand, the Texas Court of Criminal Appeals reinstated Saldaño's conviction and death sentence. *Saldaño v. State*, 70 S.W.3d 873 (Tex.Crim.App.2002.) In the proceedings before that court, the State of Texas was represented by the Prosecuting Attorney. (The District Attorney and the Attorney General were both allowed to file briefs *amicus curiae*.) The Prosecuting

---

**2.** On May 5, 1999, that court also denied Saldano's application for State post-conviction relief.

**3.** The cases were *Avalos–Alba v. Johnson*, No. 00–40194 (5th Cir. August 24, 2000), *Garcia*

*v.Johnson*, No. 99cv134 (E.D.TX. September 7, 2000), *Blue v. Johnson*, No. H–99–0350 (S.D.TX. Oct. 2, 2000), and *Broxton v. Johnson*, No. H–00cv1034 (S.D.TX. Mar. 28, 2001).

Attorney raised the defense that any error in the admission of Dr. Quijano's testimony had been waived by Saldaño's failure to object at trial. The Texas Court of Criminal Appeals, based upon this defense, again refused to consider the merits of the due process claim. *Id.*

On April 12, 2002, Saldaño refiled his petition for a writ of *habeas corpus* in this court, again raising his due process claim as well as a claim of ineffective assistance of counsel. Respondent Janie Cockrell ("the Director"), represented by the Attorney General, explicitly waived the defense that the claim was barred under the doctrine of procedural default, confessed error on the claim, and joined in Saldaño's request that he receive a new sentencing hearing. On July 16, 2002, this court allowed the District Attorney and Prosecuting Attorney (jointly) and the Republic of Argentina to file briefs *amici curiae*, but abstained from deciding the District Attorney's motion to intervene on the grounds that the issue of whether the District Attorney should be allowed to raise an affirmative defense that the Attorney General on behalf of the Respondent had explicitly declined to raise involved a question of conflicting litigation strategy best left to the State of Texas to resolve. On August 5, 2002, Saldaño filed an amended petition dropping the ineffective assistance of counsel claim, and on August 13, 2002, the District Attorney appealed this court's denial of its motion to intervene to the United States Court of Appeals for the Fifth Circuit. On February 18, 2003, the Court of Appeals reversed this court's July 16, 2002, order abstaining from deciding the motion to intervene and remanded the case to this court with instructions to decide the motion to intervene on the merits.

**Analysis**

**A. the motion to intervene**

■ Fed.R.Civ.P. 24(a)(2) provides that a person shall be permitted to intervene if he claims an interest in the transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the existing parties to the litigation adequately represent his interest. The "interest" an intervener claims must be direct, substantial, and legally protectable. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.)(*en banc*), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984).

■ In the present case, the District Attorney claims that he has an interest in the sentence of death imposed upon Saldaño and an interest in not having to conduct another sentencing hearing. It is undisputed that the respondent, represented by the Attorney General, is not seeking to protect these interests and that disposition of this case in the absence of the District Attorney's participation as a party would, as a practical matter, impair or impede those interests. The only question for the court is whether those interests are direct, substantial and legally protectable. The court finds that they are not.

The District Attorney cites no authority, and this court has found none, which supports the proposition that a prosecutor's interest in a particular jury verdict is sufficiently direct, substantial and legally protectable that he should be allowed to intervene in collateral civil litigation over the constitutionality of the procedures he employed in obtaining that verdict. Although the Fifth Circuit has not addressed this precise issue, the most analogous case on this point suggests the contrary. In *Baker v. Wade,* 769 F.2d 289 (5th Cir.1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986), a homosexual man sued several state officials, including all of

the district attorneys of the State of Texas, in federal district court, seeking to bar enforcement of a state statute criminalizing homosexual conduct. The district court held that the statute was unconstitutional. One of the district attorneys, believing that the statute was constitutional, asked the attorney general to appeal the court's ruling. The attorney general initially filed a notice of appeal, but then declined to pursue the appeal. The district attorney then moved to intervene in order to prosecute the appeal. The Fifth Circuit granted the district attorney's motion to intervene under Fed.R.Civ.P. 24(a)(2), finding that he had an interest in the constitutionality of the statute by virtue of being a state official empowered by Texas law to enforce its laws. The Court of Appeals further found that by failing to appeal a judgment holding that the statute was unconstitutional, the attorney general inadequately represented the district attorney's interests. *Id.* at 291–92.

The rationale behind this holding seems to be that because a district attorney enforces the state's laws by prosecuting offenders who violate those laws, as a practical matter his ability to do this is impeded and/or impaired if the law he is trying to enforce is held unconstitutional. Accordingly, whenever the constitutionality of a statute is challenged, the district attorney's interest in enforcing that statute by prosecuting those who violate it is direct, substantial and legally protectable. If the attorney general refuses to defend the statute's constitutionality, then the disposition of the case in the absence of the district attorney's participation will, as a practical matter, impair or impede the district attorney's ability to enforce that law by prosecuting offenders who violate it.

The key point from this analysis is that the Court of Appeals in *Baker* seems to define the district attorney's interest as his *ability* to enforce the law by prosecuting offenders. This definition is significant. In the present case, the disposition of this case in the absence of the district attorney's intervention will neither impede nor impair his ability to enforce the law by prosecuting capital cases in general or by seeking the death penalty against Saldaño in particular. The worst that can happen from the District Attorney's point of view is that Saldaño and the State of Texas will be returned to the positions they were in immediately after Saldaño was convicted of capital murder. At that point, the District Attorney will still have the same ability to seek the death sentence that he had at trial. Under these circumstances, the court finds that the District Attorney's ability to enforce the law by prosecuting cases in general, and this case in particular, has been neither impeded nor impaired.[4]

Because the District Attorney cannot establish that his direct, substantial, legally protectable interests will be impaired or impeded by the disposition of this case in his absence as a party, his motion to intervene will be denied.[5]

---

4. Limiting a prosecutor's legally protectable interest for purposes of intervention in a *habeas corpus* case to situations in which it is his ability to prosecute an offender that is threatened, rather than merely the particular sentence given an offender, is consistent with the well-settled principle that the primary duty of the prosecutor is not merely to convict, but to see that justice is done. *See* TEX CODE CRIM. PROC. art. 2.01.

5. The court also notes that in *Baker,* the Fifth Circuit appeared to consider material the fact that the federal district court's judgment that the statute was unconstitutional was contradicted by precedent from the Supreme Court of the United States. *See* 769 F.2d at 292. That is, of course, not the case here. Perhaps more important is that in that case the district attorney at all times took the position that the statute at issue was constitutional; in the

## B. the claim for relief

Saldaño claims that he was denied due process of law and equal protection of the laws by the trial court's admission of, and the prosecution's reference to, Dr. Quijano's testimony that Saldaño's Hispanic ethnicity was a positive factor for predicting future dangerousness. The Director has confessed error on the claim. The District Attorney and Prosecuting Attorney as *amici curiae* contend that this court is barred from considering the merits of that claim because it has been procedurally defaulted. They also contend that even if this claim is considered on its merits, the constitutional error was harmless. The Director has explicitly waived the procedural default defense, and because she joined in Saldaño's request for relief, the Court finds that she has intentionally, albeit implicitly, waived the harmless error defense as well. The court must determine whether constitutional error occurred, and, if it did, whether the affirmative defenses to relief on that error have been effectively waived.

### 1. validity of the confession of error

 While the court accords the Director's confession of error great weight, it is required to perform an independent analysis of Saldaño's claim. *Every v. Blackburn*, 781 F.2d 1138, 1140 (5th Cir. 1986). The court finds that the admission of the previously mentioned portions of Quijano's testimony and the District Attorney's reference to that testimony during closing argument constituted constitutional error because the testimony and argument invited the jury to determine whether Saldaño would receive the death penalty based in part upon his race and ethnicity. Considerations of race and ethnicity are irrelevant to the determination of future dangerousness, *Thompson v. Davis*, 295 F.3d 890, 894 n. 4 (9th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003), and relying upon them in deciding punishment denies a defendant an individualized sentencing determination as guaranteed by the Eighth Amendment. *Cf. Guerra v. Collins*, 916 F.Supp. 620, 636 (S.D.Tex.1995), *aff'd*, 90 F.3d 1075 (5th Cir.1996) (that defendant was an illegal alien is irrelevant for determining whether death penalty should be imposed.) Accordingly, the admission of and reference to expert opinion testimony to the effect that a person is more likely to be dangerous in the future because he is a member of a racial or ethnic group that happens to be over-represented in the prison population is constitutional error. *See Bains v. Cambra*, 204 F.3d 964, 974 (9th Cir.), *cert. denied*, 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000); *see also Guerra*, 916 F.Supp. at 636.

### 2. validity of the waiver of affirmative defenses

 Both procedural default and harmless error are affirmative defenses which are waived by the respondent if not timely and unequivocally raised. *See Gray v. Netherland*, 518 U.S. 152, 165–66, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) and *Lam v. Kelchner*, 304 F.3d 256, 269 (3d Cir.2002). Even when these defenses have been waived, however, a court may, in its discretion, consider the defenses *sua sponte. See e.g. Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir.1998) (procedural default); *United States v. McLaughlin*, 126 F.3d 130, 135 (3d Cir.1997) *cert. denied*, 524 U.S. 951, 118 S.Ct. 2366, 141

present case, the District Attorney does not disagree with the Director that constitutional error occurred. The District Attorney's disagreement with the Director's litigation strategy is limited to the Director's choice to waive two affirmative defenses that would arguably have precluded granting relief for the error.

L.Ed.2d 735 (1998) (harmless error). Because the District Attorney and Prosecuting Attorney are not parties, the court construes the assertion of these affirmative defenses by *amici curiae* as a request that this court consider the defenses *sua sponte*. The initial inquiry is whether the court should, in its discretion, do so.

### a. procedural default

Regarding the procedural default defense, the United States Court of Appeals for the Fifth Circuit has held that a district court should not, in a typical case, consider *sua sponte* whether a claim is procedurally defaulted if the respondent explicitly waives that defense. *Magouirk,* 144 F.3d at 359–60. A district court may, however, refuse to honor the respondent's waiver if accepting it would not be in the interests of comity or judicial economy. *Id.*

█ The court finds that the interest of comity is not adversely affected by honoring the Director's waiver in this case. As a matter of federal-state comity, a federal court should allow a state appellate court to enforce its own procedures and rules. *McGee v. Estelle,* 704 F.2d 764, 769 (5th Cir.1983). When this case was before the Texas Court of Criminal Appeals, the District Attorney and Prosecuting Attorney raised the failure to preserve error defense, and that court accordingly found that it was precluded from considering the merits of Saldaño's claim. The Texas Court of Criminal Appeals has held, however, that the failure to preserve error is an affirmative defense which can be waived by the State. See *Tallant v. State,* 742 S.W.2d 292, 294 (Tex.Crim.App.1987). Accordingly, honoring the Director's waiver of the procedural default defense in federal court in no way frustrates the Texas Court of Criminal Appeals' ability to enforce its own procedures and rules.

█ This case presents another, less common comity interest—federal intra-court comity. Under this doctrine, absent unusual circumstances, judges of coordinate jurisdictions within a jurisdiction should follow brethren judge's rulings, particularly regarding the treatment of similarly-situated criminal defendants. *United States v. Anaya,* 509 F.Supp. 289, 293 (S.D.Fla.1980) (*en banc*), *aff'd.,* 685 F.2d 1272 (11th Cir.1982). As explained on page four, after Saldaño first raised this claim, four other petitioners raised identical claims, and in no case did the federal courts exercise their discretion to consider *sua sponte* whether the claims were procedurally defaulted. Accepting the Director's waiver of procedural default in the present case is consistent with the actions of four other federal courts who faced the same material facts. Accordingly, declining to raise the procedural default of Saldaño's claim *sua sponte* would not adversely affect the interests of either federal-state or federal intra-court comity.

The court finds further that it is not adverse to the interest of judicial economy to honor the Director's waiver of the procedural default defense. At worst, the State will have to conduct a new punishment hearing for Saldaño that it would not have had to conduct had the procedural default defense been raised *sua sponte*. This is no different than the burden in any case where relief is granted. *Compare Clisby v. Jones,* 960 F.2d 925, 937 (11th Cir.1992) (interest of judicial economy in *habeas corpus* proceedings is served by avoiding piecemeal litigation).

Because the interests of comity and judicial economy will not be adversely affected by accepting the Director's waiver of the procedural default defense, the court will decline to consider *sua sponte* whether this claim is barred by procedural default.

### b. harmless error

The Fifth Circuit has not yet decided whether a state entity can waive the harmless error defense, but the circuits that have addressed this issue have generally held that a court should consider three factors in determining whether to *sua sponte* raise the issue of whether a constitutional violation was harmless: (1) the length and complexity of the record, (2) whether the harmlessness of the error is certain or debatable, and (3) whether a reversal will result in a protracted, costly and ultimately futile proceeding in the district court. *See e.g., United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991); *see also McLaughlin*, 126 F.3d at 135 (citing cases).

■ The problem with applying the *Giovannetti* test to the present case is that none of the courts that applied that test were faced with an intentional waiver of the harmless error defense. Instead, in those cases, petitioners claimed that a constitutional error occurred, and respondents denied the error. The courts, after finding that such error did occur, considered whether to determine *sua sponte* if the error was harmless. The respondents' failure to raise the harmless error defense in those cases was due either to inadvertence or to a mistaken belief that the issue would not be material, rather than the product of deliberate waiver. The intentional nature of the Director's waiver of the harmless error defense in the present case suggests that this court should apply the *Magouirk* test, rather than the *Giovannetti* test.

As stated above, under *Magouirk*, a court should honor a respondent's deliberate waiver of an affirmative defense unless doing so adversely impacts the interests of comity or judicial economy. Regarding federal-state comity, because the Texas Court of Criminal Appeals never reached the issue of harmless error, this court's acceptance of the Director's waiver of that defense would in no way frustrate that court's ability to enforce its own procedures and rules. In addition, as also explained above, failing to accept the Director's waiver would negatively affect the interest of federal intra-court comity. That is, none of the other four courts who considered this issue, in the context of similarly situated defendants, raised the harmless error issue *sua sponte*.

Regarding judicial economy, as stated above, granting relief in this case would result in no extra work for the state court other than what normally results from a grant of *habeas corpus* relief.

In summary, under the *Magouirk* test, this court should honor the Director's explicit waiver of the procedural default of Saldaño's claim. Because the Director also intentionally waived the harmless error defense to this claim, the court finds that the *Magouirk* test, rather than the *Giovannetti* test, should be applied to the issue of whether the court should honor the Director's waiver of the harmless error defense issue. Finally, because honoring the Director's waiver would not adversely affect the interests of comity or judicial economy the court reaches the same result regarding the Director's waiver of the harmless error defense as it did regarding her waiver of the procedural default defense. The court declines to exercise its discretion to consider *sua sponte* whether the constitutional error which occurred in this case was harmless.

### 3. effect of finding of trial error and of waiver of harmless error

■ Traditionally, constitutional error was presumed harmful and this presumption had to be rebutted by the state. *See Chapman v. California*, 386 U.S. 18,

24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under current case law, structural errors are presumed to be prejudicial, but mere trial errors do not result in reversal unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Childress v. Johnson,* 103 F.3d 1221, 1230 (5th Cir.1997). In the present case, the admission of Dr. Quijano's testimony is a trial error, not a structural error, *see Bains,* 204 F.3d at 974, and the Supreme Court of the United States and several circuits have been divided about whether the harmlessness or harmfulness of a trial error should be considered part of the petitioner's *prima-facie* case, an affirmative defense, or the subject of independent inquiry by the trial court. *See O'Neal v. McAninch,* 513 U.S. 432, 435–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Payton v. Woodford,* 299 F.3d 815, 827 (9th Cir.2002) (*en banc*), vacated on other grounds, —— U.S. ——, 123 S.Ct. 1785, 155 L.Ed.2d 662 (2003).

■■■■ To dispose of the amended petition in this case, the court must clarify the general constitutional error rule and settle the harmless error burden of proof issue. In *habeas corpus,* a structural error raises an irrebuttable presumption of prejudice, while a trial error raises a presumption of prejudice which is rebutted if the court determines that a preponderance of the evidence in the record establishes that the error did not have a substantial and injurious effect or influence·in determining the jury's verdict. *See generally Cooper v. Taylor,* 70 F.3d 1454, 1462 (4th Cir.1995) *aff'd on rehearing en banc,* 103 F.3d 366 (4th Cir.1996), *cert. denied,* 522 U.S. 824, 118 S.Ct. 83, 139 L.Ed.2d 40 (1997). As long as the respondent timely and clearly raises the defense, the court must perform a harmless error analysis. In addition, the court may, in its discretion, perform such an analysis *sua sponte,*

even if it is waived by the State. *See McLaughlin,* 126 F.3d at 135. If the court chooses to accept an intentional waiver or enforce an inadvertent waiver of the harmless error defense by the respondent, however, the presumption of harm is not rebutted and the petitioner is entitled to relief. *See e.g., Cook v. McKune,* 323 F.3d 825, 840 (10th Cir.2003).

**Conclusion**

Because the court finds that constitutional error occurred in this case, and because the court decides in its discretion to honor the Director's waiver of the affirmative defenses of procedural default and harmless error, it finds that Saldaño is entitled to relief on his claim. The Collin County District Attorney's motion to intervene will be denied, and Saldaño's amended petition for writ of *habeas corpus* will be granted. The court will enter an order denying the motion and a judgment issuing a writ of *habeas corpus.*