IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2008

Charles R. Fulbruge III
Clerk

No. 08-70020

KENNETH MOSLEY

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas, Dallas
(3:03-CV-1577)

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner Kenneth Mosley, a Texas death row inmate, requests a certificate of appealability to appeal the district court's denial of several claims in his petition for a writ of habeas corpus. For the following reasons, his request is denied.

## I. Background

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Kenneth Mosley was convicted and sentenced to death for shooting and killing Officer David Moore during a botched bank robbery on February 15, 1997, in Garland, Texas. A complete account of the facts is available in the magistrate judge's Findings, Conclusions, And Recommendation (the "FC&R"), which the district court adopted in its Order Adopting Findings, Conclusions And Recommendation (the "Adopting Order"). The relevant facts are included in our discussion below. On direct appeal, the Texas Court of Criminal Appeals affirmed Mosley's conviction and sentence in Mosley v. State, No. 73,012, 2003 WL 21467075 (Tex. Crim. App. June 25, 2003), and the United States Supreme Court denied certiorari, Mosley v. Texas, 540 U.S. 1185 (2004).

Mosley then filed a state habeas petition. After hearing arguments, the state trial court entered findings of fact and conclusions of law, recommending that the petition be denied. The Texas Court of Criminal Appeals adopted most, but not all, of the trial court's findings and conclusions in denying relief. Ex parte Mosley, No. 50,421-01 (Tex. Crim. App. July 2, 2003). Mosley then filed a federal habeas petition in the District Court for the Northern District of Texas. In its Adopting Order, the district court overruled Mosley's objections to the magistrate judge's FC&R, adopted the magistrate judge's reasoning in the FC&R, and denied Mosley habeas relief. Mosley v. Quarterman, No. 03-CV-1577-N, 2008 WL 656887 (N.D. Tex. Mar. 6, 2008). In a separate order, the district court denied a certificate of appealability ("COA") by adopting the reasoning in both its Adopting Order and the FC&R. Mosley v. Quarterman, No. 3:03-CV-1577-N (N.D. Tex. May 20, 2008). Mosley now argues that we lack jurisdiction to review the district court's decision because that court failed to

adequately review the FC&R. Alternatively, Mosley seeks a COA for six ineffective assistance of counsel claims.

## II. Jurisdiction

"Before considering the substance of [a petitioner]'s motion for a COA, we must first address whether the motion is properly before us." United States v. Johnston, 258 F.3d 361, 363 (5th Cir. 2001). A district court may designate a magistrate judge to propose findings and recommendations regarding a habeas petitioner's application for a COA. See 28 U.S.C. § 636(b)(1)(B) & (b)(3); cf. Jones v. Johnson, 134 F.3d 309, 311 n.3 (5th Cir. 1998) (assuming that a magistrate judge's recommending the grant of a certificate of probable cause is a "permissible 'additional duty' under § 636(b)(3)"). However, we do not have jurisdiction to review the magistrate judge's recommendation unless that conclusion "is subject to meaningful review by the district judge." See Jones, 134 F.3d at 311; see also Donaldson v. Ducote, 373 F.3d 622, 625 (5th Cir. 2004) ("[B]ecause the district court has not entered a final, appealable order adopting the magistrate judge's [conclusion], we do not have jurisdiction . . . ."). Under the heading "Jurisdictional Challenge," Mosley argues that the district court failed to meaningfully review the magistrate judge's recommendation by (1) adopting the magistrate judge's reasoning and (2) concluding that Mosley failed to specifically object to—and therefore reviewing for plain error—the magistrate judge's determination that Mosley was not prejudiced in his claim that trial counsel rendered ineffective assistance by not objecting to alleged victim impact evidence.[1] These claims are meritless. The district court reviewed the

---

[1] Mosley attempts to frame these arguments as violating the Federal Magistrate Judge's Act, 28 U.S.C. § 636; his due process rights; and his right to an Article III tribunal. However, all of these arguments center on Mosley's jurisdictional claim that the district court

magistrate judge's conclusions and issued a final, appealable order.[2]  We have jurisdiction to consider Mosley's application for a COA.

### III.  Standard Of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must obtain a COA in order to appeal the denial of his habeas petition in district court.  28 U.S.C. § 2253(c)(1).  Because the district court denied Mosley's application for a COA, he now seeks one from this court.  See id.

We may issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  The COA determination is a "threshold inquiry" that consists of "an overview of the claims in the habeas petition and a general assessment of their merits" but that "does not require full consideration of the factual or legal bases adduced in support of the claims."  Id. at 336.  "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA

---

failed to adequately review the magistrate judge's determination, and we therefore treat them as such.

[2] The district court concluded that Mosley's conclusory arguments failed to specifically object to a section of the FC&R and reviewed the unobjected-to section for plain error.  This is not a failure meaningfully to review the FC&R.  See Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); Nettles v. Wainwright, 677 F.2d 404, 410 n.8 (5th Cir. Unit B 1982) (en banc) ("Frivolous, conclusive or general objections need not be considered by the district court." (emphasis added)), overruled on other grounds by Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

should issue must be resolved in the petitioner's favor." Johnson v. Quarterman, 483 F.3d 278, 285 (5th Cir. 2007) (internal quotation marks omitted).

Additionally, both the district court and the magistrate judge evaluated Mosley's claims through AEDPA's deferential lens. Under AEDPA, habeas relief may not be granted on any claim adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by [the] State court shall be presumed to be correct" unless rebutted by clear and convincing evidence. Id. § 2254(e)(1).

## IV. Discussion

Mosley seeks a COA on six issues: (1) whether trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence; (2) whether trial counsel rendered ineffective assistance by failing to object to purported victim impact evidence during the guilt phase of the proceedings; (3) whether trial counsel rendered ineffective assistance by failing to object to a witness's prior consistent statement; (4) whether trial counsel rendered ineffective assistance by failing to seek a limiting instruction when admitting the entirety of an expert's investigation to cross-examine the expert; (5) whether appellate counsel rendered ineffective assistance by failing to argue that the prosecution improperly impeached a defense witness; and (6) whether appellate counsel rendered ineffective assistance by failing to challenge the instruction that the jury received regarding Mosley's eligibility for parole.

In addition to AEDPA's standards of review, all of Mosley's claims are governed by the familiar two-part standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Mosley must show that counsel's performance was deficient, meaning that "counsel's performance must be 'outside the wide range of professionally competent assistance.'" United States v. Drones, 218 F.3d 496, 500 (5th Cir. 2000) (quoting Strickland, 466 U.S. at 690). Second, Mosley must show that this "deficient performance prejudiced [his] defense such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

A.    Failure To Investigate And Present Mitigation Evidence

Mosley first argues that his counsel rendered ineffective assistance by failing to investigate or present mitigating evidence at sentencing. The district court agreed with the state court's conclusion that Mosley could show neither deficient performance nor prejudice as required by Strickland.

At sentencing, the prosecution presented evidence of Mosley's prior criminal conduct and violent behavior. This included evidence that Mosley sexually assaulted a woman in 1985; that Mosley was arrested in 1985 for possession of marijuana and possession of Chinese throwing stars, which were classified as illegal knives; that Mosley was arrested in November 1996 for stealing merchandise from Home Depot and returning it for cash refunds; that Mosley robbed a Home Depot at gunpoint on February 9, 1997, six days before the botched bank robbery that resulted in Mosley's current capital conviction; that, roughly forty days before commission of the current crime, Mosley robbed the very same bank; and that, while in the holding area during the course of the

trial, Mosley was generally belligerent and, according to the guards, made statements to the effect that it would make his day to kill another cop.

The defense presented evidence that Mosley showed remorse for his actions and that Mosley was not a future danger because drug abuse was to blame for his behavior. Defense counsel showed that Mosley stated that he felt worse about the officer than he did for himself; that Mosley was a hard worker but lost his job due to drug abuse; that Mosley had attended drug abuse programs; and that drug abuse caused Mosley's church to "disfellowship" him. Mosley additionally testified on his own behalf, despite his counsel's admonitions, in order to explain that he made the statements to the guards because he was upset at the jury's guilty verdict and upset with problems obtaining his meals and medication.

During the state habeas proceedings, the state court held that counsel's investigation of Mosley's background and mental state was reasonable and that Mosley was not prejudiced in his defense. It found that counsel, with the aid of an investigator, interviewed Mosley, his family members, his counselor, and many of his acquaintances. While counsel learned that Mosley had been whipped by his father, none of those interviewed revealed that Mosley experienced any injury, trauma, or disease that indicated Mosley suffered from an altered mental process. The state court also noted that counsel's investigation of Mosley's medical records revealed no indication of mental disease. Mosley's wife indicated that she believed his problems were due to drug abuse. The psychiatrist hired by Mosley's counsel further reported no findings inconsistent with drug use. And finally, the state court found that Mosley had refused to allow his trial counsel to call his family members as witnesses.

The district court similarly denied habeas relief to Mosley. There, Mosley argued that his counsel failed to investigate and present evidence that he had a long history of depression, which he self-medicated with drugs; that he suffers from frontal lobe impairment and diffuse brain injury; and that he was exposed to pesticides while growing up and working on a plantation in the segregated South. Despite this, the district court concluded that Mosley failed to overcome by clear and convincing evidence the presumption of correctness enjoyed by state court findings. Further, it determined that the state court's conclusions were not an unreasonable application of federal law or based on an unreasonable determination of the facts in light of the presented evidence.

We do not believe that reasonable jurists would disagree with the district court's resolution. To determine whether Mosley's counsel was deficient, the focus is "on whether the investigation supporting counsel's decision not to introduce mitigation evidence . . . was itself reasonable." Wiggins v. Smith, 539 U.S. 510, 523 (2003). In Wiggins, the defense counsel's investigation was unreasonable because counsel consulted only two sources regarding the defendant's "life history": a one-page pre-sentence investigation and a city social services record. Id. Similarly, in Williams v. Taylor, counsel's investigation was unreasonable because counsel failed to obtain prison records showing Williams's nonviolent behavior and failed to obtain other records indicating Williams's "nightmarish childhood" due to counsel's incorrect belief that state law barred access to such records. 529 U.S. 362, 395–96 (2000). And in Rompilla v. Beard, counsel's investigation was unreasonable because counsel failed to review a prior conviction file used by the prosecution, a file that would have alerted counsel that further investigation was necessary. 545 U.S. 374, 390–91 (2005).

8

Here, Mosley's counsel conducted a reasonable investigation. Counsel interviewed Mosley, Mosley's family members, friends, counselor, co-workers, and acquaintances. Counsel reviewed Mosley's medical records and consulted a psychiatrist. Nonetheless, Mosley argues that counsel's investigation was inadequate because it failed to uncover the possibility that Mosley suffered from brain impairment. According to Mosley, the investigation would have uncovered this had counsel heeded the psychiatrist's recommendation that Mosley undergo neuropsychological testing. However, Mosley's counsel's recollection of receiving such a recommendation differed from the psychiatrist's, and the state court found counsel's recollection more persuasive. Mosley has not controverted this finding with clear and convincing evidence. The district court's denial of this claim is therefore not debatable, and we deny a COA for this issue.

## B.    Failure To Object To Purported Victim Impact Evidence

Next, Mosley argues that counsel rendered ineffective assistance by failing to object to alleged victim impact evidence during the guilt phase of trial. The district court agreed with the state court's conclusion that no victim impact evidence was admitted and that, were such evidence admitted, Mosley failed to show that he was prejudiced.

During the trial's guilt phase, the prosecution called Sheila Moore, Officer Moore's wife, to the stand. Mrs. Moore identified the victim's body as her husband's. She also testified as to her actions that day, both before hearing the news of her husband's death and after. She stated that she had paged her husband while out shopping with a friend and that, instead of her husband calling back, she spoke to another officer and the police chaplain. Then, her friend drove her to the police station, where she was informed of her husband's death. On hearing the news, she testified that she was "numb" and eventually

9

"fell apart." She was then taken to the hospital, where she was permitted to see her husband. Mrs. Mosley stated that she identified her husband at the hospital and that the nurse permitted her to hold her husband's hand.

On habeas review, the state court concluded that no victim impact evidence had been admitted and that, regardless, Mosley's defense was not prejudiced.[3] It found that, "while [Mrs.] Moore testified that she was 'shaken,' in a 'fog,' and 'fell apart' after learning of the victim's death, she never testified about the effects of the crime on herself or her family." The state court further found that the prosecutor never asked Mrs. Moore how the crime had affected her family. Finally, the state court concluded that Mosley failed to show how the outcome of the trial would have differed had counsel objected to the testimony.

The district court concluded that the state court did not unreasonably apply federal law in its determinations that no victim impact evidence was introduced and, in the alternative, that Mosley failed to show that his defense was prejudiced. As to the former, the district court noted that Mrs. Moore's testimony as to how she learned of her husband's death appeared to be "contextual evidence" and not victim impact evidence. As to prejudice, the district court emphasized that the overwhelming evidence of guilt supported the conclusion that Mosley was not prejudiced by this testimony. The district court listed the undisputed evidence of the crime: that Mosley entered the bank with the intent to rob it; that Mosley drew his semiautomatic, 9 millimeter handgun

---

[3] The referenced findings are those that have been adopted by the Texas Court of Criminal Appeals. Mosley argues that the fact that the Texas Court of Criminal Appeals did not adopt all of the trial court's findings suggests that reasonable jurists can disagree that victim impact evidence was admitted, but this argument fails to address how reasonable jurists would disagree with the federal district court's conclusion that the state court reasonably applied federal law.

when Officer Moore approached; that Officer Moore and Mosley struggled and fell through a window; and that during the struggle, Mosley's gun jammed after firing five rounds, four of which hit Officer Moore and killed him. Mosley only contested the issue of intent. He did so by claiming the gun fired by accident in his trial testimony, which the district court summarized: "in essence, Mosley testified that as he attempted to surrender his gun to Officer Moore, he accidentally discharged it five times, hitting Officer Moore four times and killing him."

We do not believe reasonable jurists would dispute the district court's conclusion. First, we note that Mosley fails to address the state court's and district court's conclusions that no victim impact testimony was admitted; Mosley's brief assumes without explanation that Mrs. Moore's testimony was, in fact, impermissible victim impact testimony. And second, even assuming that victim impact evidence was improperly admitted, Mosley fails to explain how Mrs. Moore's testimony prejudiced his defense in light of the overwhelming evidence of guilt. Thus, we deny a COA on this issue.

C.     Failure To Object To Admission Of A Prior Consistent Statement

Third, Mosley claims that he received ineffective assistance because trial counsel failed to object to the admission of a prior consistent statement given by Brandy Johnson. The district court agreed with the state court's conclusion that Mosley's counsel were not ineffective because Johnson's statement was properly admitted to rebut a charge of recent fabrication.

Johnson testified for the prosecution. She stated that, while working across the street from the bank that Mosley planned to rob on the day of the shooting, she observed a man meeting Mosley's description standing over another man on the ground; that she watched the standing man's hand recoil as

11

he fired a pistol at the man on the ground; and that the standing man then walked away.  On cross-examination, Johnson confirmed that she did not see Mosley fire any shots back into the bank.  Mosley's counsel then questioned Johnson about a written statement that she gave police that day.  She conceded that the statement indicated that she saw Mosley fire a shot into the bank and that representatives of the District Attorney's office came to her workplace about a week after the shooting.  On redirect, Johnson testified that four days after the offense she told a detective that she saw a shot fired at a downward angle toward the body on the ground.

The state court found that Mosley's defense counsel had implied that Johnson had a motive to fabricate her story as a result of her meeting with prosecutors from the District Attorney's office.  The court then found that Johnson's statement to the detective occurred before she came into contact with the prosecutors and was therefore made before the motive to fabricate arose.  Thus, Mosley's consistent statement was admissible as an exception to the hearsay rule in order to challenge the charge of fabrication.  The district court agreed, concluding that the state court did not unreasonably apply federal law.

Mosely's ineffective assistance claim revolves around whether his lawyer failed to object to damaging hearsay.  A prior statement by a witness is not hearsay if it is consistent with the witness's testimony and offered to rebut an implied charge of recent fabrication, improper influence, or improper motive. TEX. R. EVID. 801(e)(1)(B).  The prior consistent statement, however, must have been made before the alleged improper influence occurred.  Haughton v. State, 805 S.W.2d 405, 408 (Tex. Crim. App. 1990); see also Tome v. United States, 513 U.S. 150, 167 (1995) (interpreting the identical, federal hearsay exception as requiring the same).  Here, Mosley's trial counsel implied that Johnson had a

12

motive to fabricate her testimony as a result of her meeting the prosecutors; her prior consistent statement predated that meeting. Mosley argues that Johnson's motive to fabricate arose when she met with the detective, but he offers no clear and convincing evidence to rebut the state court's finding that Johnson's motive to fabricate arose when she met with the prosecutors. Therefore, we conclude that reasonable jurists would not debate the district court's conclusion that the state court reasonably applied Strickland, and we deny a COA for this issue.

D.    Failure To Obtain A Limiting Instruction For Expert Investigation

Mosley's fourth argument claims that trial counsel rendered ineffective assistance by failing to obtain a limiting instruction when counsel admitted the entirety of the expert's investigation into evidence. The district court concluded that the state court did not unreasonably apply federal law in determining that Mosley did not show deficient performance or prejudice.

During the trial, Vicki Hall testified as an expert for the prosecution. Based on her analysis of the trace evidence, she concluded that the final gunshot that struck Officer Moore was fired from more than one foot away. This fact supported the prosecution's theory that Mosley stepped back in order to fire a final, coup de grace shot. On cross-examination, Mosley's counsel admitted into evidence "every scrap of paper" that Hall produced in her investigation without limiting the use of such evidence to cross-examination purposes. Counsel utilized this evidence to elicit testimony from Hall that the only written report that she issued stated that she could not estimate the distance of the last shot. Subsequently, Mosley's trial counsel explained that all of Hall's investigation was admitted without a limiting instruction because juries do not generally understand a limiting instruction and, instead, they might believe counsel is trying to hide something.

The district court, like the state court, concluded that trial counsel's strategy not to obtain a limiting instruction was made after some deliberation and was not so ill-chosen that it permeated Mosley's trial with obvious unfairness. Both courts noted that the prosecution did not mention Hall's investigatory materials during its arguments. Additionally, both court's concluded that Mosley failed to show that this testimony prejudiced his defense because Hall testified in detail as to what her investigation included.

Mosley fails to point to any authority or raise any argument suggesting that trial counsel's determination to include the facts of Hall's investigation without limitation was so deficient as to be outside the range of professionally competent assistance. Instead, Hall asserts that the magistrate judge, in the FC&R, conceded that trial counsel's explanation was implausible. The magistrate judge, however, did no such thing: the FC&R stated that "it has not been shown that the strategy was so ill-chosen that it permeated [Mosley]'s trial with obvious unfairness, especially as the prosecutors did not utilize Ms. Hall's testimony at all during closing statements." Further, we are not persuaded that the district court likely erred in concluding that the state court's determination (that admitting this evidence without a limiting instruction did not prejudice Mosley) was a reasonable application of Strickland. Hall's detailed testimony placed many of the facts from her investigation before the jury. Mosley argues that failing to limit the use of the evidence permitted Irving Stone, a subsequent expert for the prosecution, to read into the record much of Hall's investigation. This, according to Mosley, provided the scientific basis for the prosecution's coup de grace theory. But Mosley fails to show a reasonable probability that—in light

14

of the significant amount of inculpatory evidence—the outcome of the trial would have been affected had the evidence been limited to impeaching Hall.

We, therefore, do not believe reasonable jurists would debate the district court's determination. On this issue, the COA is denied.

E.     Failure To Challenge On Appeal Cross-Examination Of Witness

Fifth, Mosley argues that his appellate counsel rendered ineffective assistance by failing to challenge the prosecution's cross-examination of Jaspar Mallard. Jaspar Mallard testified as an eyewitness for Mosley's defense. Mallard stated that Mosley did not fire the final, coup de grace shot described by Johnson; instead, he asserted that all of the shots were fired from close range. On cross-examination and over Mosley's trial counsel's objection, the prosecution questioned Mallard about his bi-polar condition and what medication he was taking at the time of the shooting. During redirect examination, Mallard testified that the medications do not affect his vision or memory.

The state court concluded that Mosley's appellate counsel was not deficient in failing to raise this claim. It found that the prosecution's questions were relevant and admissible because they concerned whether Mallard could accurately perceive events. Alternatively, the state court concluded that Mosley failed to show how he was prejudiced by his appellate counsel's failure to object. The district court, in turn, determined that the state court reasonably applied Strickland's standards.

Mosley presses that impeachment was so clearly improper that the failure to challenge the impeachment on appeal renders counsel ineffective. But Mosley's categorical assertion is belied by the support he cites. In Virts v. State, the Texas Court of Criminal Appeals stated that "[c]ross-examination of a . . .

witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." 739 S.W.2d 25, 30 (Tex. Crim. App. 1987) (emphasis added). Mosley fails to demonstrate a debatable issue on whether the district court was correct in concluding that the state court reasonably applied Strickland to his claim that his appellate counsel were deficient, and we deny a COA for this issue.

F.    Failure To Challenge On Appeal The Jury's Parole Instruction

And finally, Mosley claims that his appellate counsel rendered ineffective assistance by failing to challenge the alleged incorrect jury instruction regarding his parole eligibility had he been sentenced to a life term. This argument, however, was not made in the state court's habeas proceedings or in the district court, and Mosley has therefore procedurally defaulted this claim. See Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."). On this issue, the COA is denied.

## V.  Conclusion

For the foregoing reasons, Mosley's application for a COA is DENIED.