REVISED March 6, 2017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70006

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2017

Lyle W. Cayce
Clerk

ROLANDO RUIZ,

            Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

            Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, DENNIS, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Rolando Ruiz murdered Theresa Rodriguez in 1992; he has been sentenced to death by lethal injection, and his execution is now set for March 7, 2017. At this late hour, Ruiz seeks a certificate of appealability to allow review of the rejection by the United States District Court of his most recent federal petition for a writ of habeas corpus. He contends that the district court erred by affording deference to the state court's determination of federal law—specifically, by applying the deferential standard of the Antiterrorism and

Effective Death Penalty Act. We conclude that, even under a *de novo* standard of review, no "jurist[] of reason could disagree with the district court's resolution of his constitutional claims or . . . conclude the issues presented are adequate to deserve encouragement to proceed further."[1] We deny his motion for a COA.

## I.

We will not recount again the circumstances surrounding Ruiz's crime, his conviction, and his subsequent actions for relief on direct and collateral review.[2] Facing execution in nineteen days, Ruiz filed his third petition in the Texas state courts, arguing, among other grounds, that he was entitled to relief because of the allegedly unconstitutional combination of (1) a significant delay in time between the date of his conviction and the date of his execution and (2) the conditions of his confinement, including multiple prior last-minute stays and withdrawn execution dates he faced during that delay—"a constitutional challenge against [the] carrying out of a death sentence on the grounds that the years on death row make the ultimate punishment cruel and unusual."[3] Five days before his scheduled execution, the Texas Court of Appeal "dismiss[ed] Ruiz's . . . application under Article 11.071, § 5" of the Texas Code of Criminal Procedure and withdrew its stay of execution.[4]

After the Texas Court of Criminal Appeal's dismissal, Ruiz waited three months before filing his petition for a writ of habeas corpus in the United States District Court on February 10, 2017, less than a month before his newly

---

[1] *Buck v. Davis*, No. 15-8049, 2017 WL 685534, at *11 (U.S. Feb. 22, 2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

[2] *See Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006); *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007); *Ruiz v. Stephens*, 728 F.3d 416 (5th Cir. 2013); *Ruiz v. Stephens*, No. 11-70011, 2017 WL 694492 (5th Cir. Feb. 21, 2017).

[3] *Ex Parte Ruiz*, No. WR-27,328-03 and WR-27,328-04, 2016 WL 6609721, at *18 (Tex. Crim. App. Nov. 9, 2016).

[4] *Id.*

set execution date of March 7, 2017. The district court dismissed that petition and denied COA. Ruiz now seeks a COA, a prerequisite to his right to appeal dismissal of his petition.[5]

## II.

Ruiz's arguments focus upon the level of review his claims received in the district court.[6] Given the present posture of the case, we can cut to the chase and assume *arguendo* that the state court's rejection of Ruiz's petition is due no deference and that we ought review his federal claims *de novo*.[7] This, because under *de novo* review, we are persuaded that we cannot grant a COA. In deciding whether Ruiz has made the requisite "substantial showing of the denial of a constitutional right,"[8] we engage in "a threshold inquiry into the underlying merit of the claims" without engaging in an ultimate merits analysis and "without full consideration of the factual or legal bases adduced in support of [Ruiz's] claims."[9]

The required substantial showing of the denial of a constitutional right must have some footing in the law. And we are not aware of any court that has found an Eighth Amendment violation occasioned by years on death row while a prisoner pursues his direct and collateral appeals.[10] Our own jurisprudence

---

[5] 28 U.S.C. § 2253(c)(1).

[6] This, in part, because Ruiz avers that the Texas Court of Criminal Appeals misconstrued the claim he presented to them. That the Texas Court of Criminal Appeals determined that Ruiz's claim was not meaningfully distinct from other *Lackey* claims it had previously considered and rejected does not mean that court misunderstood his claim. Ruiz's accent on his conditions of confinement is common to the *Lackey* claim; every court that has rejected it has done so against the backdrop of the conditions of confinement of death row prisoners.

[7] The district court wrote that "whether this Court reviews Ruiz's *Lackey* claim under a *de novo* or AEDPA standard, it plainly appears he is not entitled to relief" without further elaboration.

[8] 28 U.S.C. § 2253(c)(2).

[9] *Buck*, 2017 WL 685534, at *11-12.

[10] *See Knight v. Florida*, 120 S. Ct. 459, 461 (1999) (Thomas, J., concurring) (concurring in denial of certiorari in extended death-row confinement claims and, in response

on the subject is well-known: "[t]here are compelling justifications for the delay between conviction and the execution of a death sentence. . . . [Prisoners who have] benefited from this careful and meticulous process . . . cannot [later] complain that the expensive and laborious process of habeas corpus appeals which exists to protect [them] violate[s] other of [their] rights."[11] Ruiz has not directed us to a single case that has held otherwise. Under a *de novo* standard of review, Ruiz has failed to make the "substantial showing of the denial of a constitutional right"[12] necessary for a COA to issue—claims of this nature have been rejected by every court that has heard them.

## III.

Much of Ruiz's petition discusses the conditions of confinement he has faced on death row. We do not resolve the ultimate merits of Ruiz's claim; that road is forbidden to us on a motion for a COA.[13] Nor do we address the conditions death row inmates, in Texas or elsewhere, face generally. The solitary confinement of prisoners has long been at issue in suits challenging prison conditions.[14] To the extent that Ruiz's conditions of confinement violate

---

to Justice Stevens's "invitation to state and lower courts to serve as 'laboratories' in which the viability of this claim could receive further study," arguing that courts "have resoundingly rejected the claim as meritless"); *see also Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995) ("We conclude that Appellant has failed to show that executing him after fifteen years on death row, during which time he faced at least seven execution dates, would constitute cruel and unusual punishment."); *Johns v. Bowersox*, 203 F.3d 538, 547 (8th Cir. 2000) (holding that, even if petitioner's *Lackey* claim were not barred, "[a]bsent evidence that the delay was caused intentionally to prolong the defendants time on death row, we [have] held that it [does] not even begin to approach a constitutional violation"); *Smith v. Mahoney*, 611 F.3d 978, 998 (9th Cir. 2010) (holding, in the context of AEDPA review, that "the Supreme Court has never held that execution after a long tenure on death row is cruel and unusual punishment").

[11] *White v. Johnson*, 79 F.3d 432, 439 (5th Cir. 1996); *accord Reed v. Quarterman*, 504 F.3d 465, 488 (5th Cir. 2007); *Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997); *Lackey v. Johnson*, 83 F.3d 116 (5th Cir. 1996).

[12] 28 U.S.C. § 2253. *See also Buck*, 2017 WL 685534, at *11; *Miller-El*, 537 U.S. at 336; *Jackson v. Dretke*, 450 F.3d 614, 616 (5th Cir. 2006).

[13] *Buck*, 2017 WL 685534, at *12.

[14] *See, e.g., Davis v. Ayala*, 135 S. Ct. 2187, 2208-10 (2015) (Kennedy, J., concurring).

his right to due process or his substantive rights under the Eighth Amendment, Congress has created a specific throughway to the federal courts to redress such wrongs: a timely § 1983 suit.[15]

Despite being a named plaintiff in a § 1983 method-of-execution suit challenging Texas's lethal injection protocol filed last year,[16] Ruiz voiced no concern regarding Texas's death row conditions of confinement, this at a time that would have allowed him to develop his claims in the district court. Had he done so, we might be properly situated to determine the merit of such claims. Instead, he brings his grievance now, at the eleventh hour, when its development would again force a stay of execution. In response to systemic abuses by prisoners bringing dilatory claims, the federal courts—and this circuit in particular—have been forced to develop extensive jurisprudence resisting those requests for long-available claims presented, for the first time, on the eve of execution.[17] Ruiz alleges he has been in solitary confinement for the majority of the time he has been on death row. To the extent he wished to challenge that confinement, he had ample opportunity to do so. In accordance with our earlier decisions regarding last-minute claims, we are disinclined to grant him equitable relief at this late hour.

---

[15] 42 U.S.C. § 1983 (2012).

[16] *See Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016).

[17] *See, e.g.*, *Nelson v. Campbell*, 541 U.S. 637, 650 (2004) ("Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."); *Sepulvado v. Jindal*, 729 F.3d 413, 420-21 (5th Cir. 2013) (vacating a stay where inmate filed last-minute challenge against a procedure he had known about for two years); *Brown v. Livingston*, 457 F.3d 390, 391 (5th Cir. 2006) (denying equitable relief where "[a]lthough [the prisoner's] direct appeal has been final for seven years, he did not file the instant complaint until six days before his scheduled execution"); *Reese v. Livingston*, 453 F.3d 289, 291 (5th Cir. 2006) (denying stay of execution because "a plaintiff cannot wait until a stay must be granted to enable him to develop facts and take the case to trial—not when there is no satisfactory explanation for the delay"); *White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) (denying stay in dilatory § 1983 challenge to lethal injection protocol).

IV.

Ruiz's claims have been heard and, from top to bottom, found meritless. Working in the harness of statutory and settled common law rules, the federal and state courts have done handsprings to protect Ruiz's procedural and substantive rights. This Court has stayed his execution twice before to allow full consideration of his claims. His most recent claims do not warrant a third stay.

We are keenly aware of the admonitions of *Buck v. Davis*. Properly applied, they do not reset the balance of federalism struck by Congress and the settled constitutional commands attending capital punishment. We are equally sensitive to the compelling concerns expressed by several justices. They call on the power of courts that are no strangers to the conditions of confinement of death sentence prisoners. Eighth Amendment concerns, by definition, are seldom implicated by an otherwise valid life sentence of an adult. Rather, these expressions of concern respond to the conditions of confinement and the visit of uncertainty upon death penalty prisoners; a product in no small part of the shifting rules of engagement from a top-down, case-by-case effort to develop a coherent jurisprudence—this by the tandem work of state and federal courts compelled by federalism.

One might suggest that the very developmental movement of this body of law, with the accent upon the Eighth Amendment's sometimes-look to evolving standards, compels here the answer to the questions posed by an application for a COA—whether the petitioner has made a substantial showing of the denial of a constitutional right, even when faced, not by want of law, but a wall of cases uniformly rejecting the claim—a wall which only the High Court can breach in a case that reaches it while abiding the rules essential to the entire process. Inviting ventures by the lower federal courts is misaddressed.

Given the statutory restraints upon the inferior federal courts, they are ill-equipped to afford solutions while remaining faithful to the directives for interactive readings of federal law by state and federal courts. Development of this body of law comes more naturally from the state courts, whose decisions are directly reviewable on certiorari without the restraints the inferior federal courts face on habeas, and on whose shoulders fall the overwhelming share of the difficulties wrought by capital punishment. To the extent evolving standards are the reference, the ear of state courts may be closer to the people.

Make no mistake, the claim that uncertainties facing a death-sentenced petitioner are a violation of the Eighth Amendment challenge the very validity of capital punishment, the response to which is the province of the Supreme Court in its resolution of cases that make their way there without jumping the well-laid traces so necessary to our federalism. The path to the Supreme Court in capital cases need not always be—in the first instance—through the inferior federal courts.

**\*\*\*\***

The motion for a COA is denied. The motion for a stay pending our consideration of a motion for a COA is denied as moot.

DENNIS, Circuit Judge, concurs in the decree denying a COA and a stay of proceedings.