# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-70025

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2017

**Lyle W. Cayce**
Clerk

VICTOR HUGO SALDAÑO,

      Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:08-CV-00193

Before CLEMENT, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Victor Hugo Saldaño was convicted of capital murder and sentenced to death in 1996. Texas later confessed constitutional error in the punishment stage—namely, introduction of racist testimony to support a finding of future dangerousness. Saldaño was again sentenced to death in 2004. He now appeals the district court's denial of habeas relief. We GRANT a certificate of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70025

appealability ("COA") on two issues: whether Saldaño was denied due process because he was not competent to stand trial and because the trial court failed to hold a competency hearing, and whether trial counsel was ineffective in failing to request a competency hearing. We DENY a COA on all other issues raised by Saldaño in his petition for habeas corpus.

## I. BACKGROUND

### A.     Saldaño's First Trial

Saldaño, a citizen of Argentina, faces the death penalty for murdering Paul King in November 1995. A jury convicted Saldaño of capital murder in July 1996. As required by Texas law when the state seeks to impose the death penalty, the trial court then held a separate proceeding in which the jury considered two special issues: (1) "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"; and (2) whether mitigating circumstances warranted life imprisonment instead of death. Tex. Code Crim. Proc. art. 37.071, § 2(b)(1), (e). During this proceeding, the state elicited testimony from Dr. Walter Quijano, a clinical psychologist, about the likelihood of Saldaño's future dangerousness. Dr. Quijano testified that Saldaño's race (Hispanic) made him more likely to commit acts of violence in the future. The jury found that (1) there was a probability that Saldaño would commit criminal acts of violence constituting a threat to society, and (2) mitigating circumstances did not warrant life imprisonment rather than the death penalty. Accordingly, the trial court sentenced Saldaño to death.

On direct appeal, Saldaño challenged Dr. Quijano's racist testimony. The Texas Court of Criminal Appeals ("TCCA") affirmed the sentence. After the Texas Attorney General confessed error, however, the Supreme Court vacated the judgment and remanded the case back to the TCCA for further consideration. *Saldano v. Texas*, 530 U.S. 1212 (2000). On remand, the TCCA

No. 16-70025

again affirmed the sentence. *Saldano v. State*, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002).

Saldaño then filed a federal habeas petition. After the Attorney General again confessed constitutional error, the district attorney responsible for prosecuting Saldaño tried to intervene in order to defend the death sentence. *See Saldano v. Roach*, 363 F.3d 545, 550 (5th Cir. 2004). The district court denied this motion to intervene and granted Saldaño's habeas petition, finding that "the admission of and reference to expert opinion testimony to the effect that a person is more likely to be dangerous in the future because he is a member of a racial or ethnic group that happens to be over-represented in the prison population is constitutional error." *Saldano v. Cockrell*, 267 F. Supp. 2d 635, 642 (E.D. Tex. 2003). This Court affirmed the district court's denial of the motion to intervene and dismissed the district attorney's appeal of the order granting habeas relief. *Saldano*, 363 F.3d at 556. Accordingly, Saldaño was granted a new punishment trial.

## B.    Saldaño's Punishment Retrial

Saldaño's punishment retrial took place in November 2004. By that time, Saldaño's mental health had appeared to deteriorate. For example, Saldaño attempted to commit suicide in 2001; his behavior grew erratic and his speech disorganized; he often refused to shower; he reported hearing voices; and he ate his own feces. Saldaño started misbehaving as well: among other things, he started fires in his cell; masturbated in public; and threw feces at prison guards.

Mental health professionals disagreed on why Saldaño's mental state had appeared to deteriorate. Dr. Orlando Peccora, a psychiatrist who treated Saldaño at the Jester IV Psychiatric Facility of the Texas Department of Criminal Justice ("TDCJ"), submitted a declaration in which he diagnosed Saldaño with depression which "sometimes involved psychotic ideations,

3

No. 16-70025

hallucinations and delusions." Dr. Peccora also noted Saldaño's "diminished cognitive ability" and "diminished ability to react in emotionally appropriate fashion to events around him," although he did not believe Saldaño was incompetent. Dr. Peccora attributed Saldaño's misbehavior on death row to his mental deterioration, and attributed his mental deterioration to the isolation of death row. Some TDCJ doctors diagnosed Saldaño with forms of psychosis— specifically, schizophrenia and schizoaffective disorder, which involve cognitive and behavioral dysfunction. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 99–101, 105–07 (5th ed. 2013). Other TDCJ doctors, however, diagnosed Saldaño with antisocial personality disorder. In their opinion, the hallucinations, delusions, and suicidal ideations Saldaño reported were fabricated in order to obtain drugs.

Saldaño's mental state was a recurring issue throughout the punishment retrial. Indeed, the record reflects Saldaño's abnormal behavior during voir dire and the trial itself: Saldaño masturbated inside his prison clothes before the jury on several occasions; he refused to wear nonprison clothes; and during voir dire, he read magazines and at one point yawned loudly. In addition, Saldaño did not always speak coherently. For example, the following exchange occurred after the first masturbation incident:

> [THE COURT:] So, having said all that, [counsel] has said that you intend not to act out anymore in the courtroom. Is that correct?
>
> THE DEFENDANT: (No audible response)
>
> THE COURT: You intend to do—
>
> THE DEFENDANT: (In English) Well, according—according by the Supreme Court of the United States, the rules of the law will be provided in this case, according by—according by the rule of the law.
>
> THE COURT: I'm not—go ahead.
>
> THE DEFENDANT: (In English) You believe in the Texas Penal Code is (unintelligible).

4

No. 16-70025

THE COURT REPORTER: I can't understand what he's saying, Judge.

THE COURT: I'm sorry. I could not understand either.

THE DEFENDANT: (unintelligible)

THE INTERPRETER: Five years for murder; for manslaughter.

THE DEFENDANT: (In English) According by the—by the rule—the Texas Penal Code, so at this point what I—I agree with everything you do right. You do everything right. I—

THE COURT: Well, I appreciate that.

The trial transcript is littered with other instances of incoherent or disordered speech.

The record also reflects the judge's and counsel's concerns about Saldaño's mental state. During voir dire, on October 5, 2004, Saldaño's counsel raised the issue of competency with the court after receiving Dr. Peccora's declaration and noting Saldaño's strange behavior. The judge gave defense counsel authority to seek a competency evaluation. The judge inquired about the status of this evaluation a couple days later. Defense counsel again requested a competency evaluation after one of the masturbation incidents. But the two psychiatrists who examined Saldaño a total of three times during the trial found him competent each time.[1] Therefore, defense counsel never requested a competency hearing, and the judge indicated near the end of the trial that he had no reason to believe Saldaño was legally incompetent.

Although defense counsel never argued that Saldaño was incompetent, counsel did argue in a pretrial motion that (1) retrying Saldaño after years of mental deterioration while on death row was unconstitutional, and

---

[1] The results of the examinations are not in the record. Moreover, it is unclear whether the psychiatrists actually examined Saldaño in person; when defense counsel first brought up the issue of competency on October 5, defense lawyer John Tatum stated that they would direct a psychiatrist "to make the inquiry, evaluation, solely based on this affidavit of a treating psychiatrist"—seemingly referring to Dr. Peccora's declaration.

(2) evidence of Saldaño's misbehavior while on death row (which featured prominently in the state's case for future dangerousness) should be excluded. At the November 5, 2004 hearing on this motion, the defense sought to put Dr. Peccora on the stand. But the trial court ruled that under *Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App. 1997), the state must have an opportunity to examine Saldaño with its own expert before the defense expert could testify about Saldaño's mental state. Defense counsel expressed concern that a *Lagrone* examination "could actually be used against [Saldaño] at trial"; accordingly, counsel invoked Saldaño's Fifth Amendment right and refused to give the state an opportunity to conduct a *Lagrone* examination.

Defense counsel later filed a motion seeking to limit the scope of a *Lagrone* examination, which the trial court denied on November 12, 2004. At that time, the trial court clarified that if Dr. Peccora were to testify on Saldaño's behalf, then the state would be able to introduce its own expert testimony "about anything relevant to his mental state, including future dangerousness." Defense counsel again chose not to put Dr. Peccora on the stand. Likewise, defense counsel declined to put Saldaño's mother before the jury because she too intended to testify about Saldaño's mental state. The defense's case for mitigation focused on Saldaño's intoxication when he committed the crime, his lack of a prior criminal record, and the fact that it was his co-defendant's idea to commit the crime. As in the first trial, the jury answered the two special issues such that the court imposed the death penalty.

Defense counsel then filed a motion for a new trial, which the trial court denied. On direct appeal, the TCCA affirmed Saldaño's sentence. *Saldano v. State*, 232 S.W.3d 77, 82 (Tex. Crim. App. 2007).

## C.    **Habeas Petitions**

Saldaño filed a petition for habeas corpus in state court on February 15, 2007. He raised a number of grounds for relief, including ineffective assistance

of trial counsel, incompetency to stand trial, and the trial court's failure to hold a competency hearing. Saldaño offered several affidavits in support of his petition, including one by psychiatrist Dr. Robert Cantu who opined that Saldaño was incompetent at the punishment retrial. The state trial court issued 511 findings of fact and conclusions of law and recommended denying relief. The TCCA adopted the state trial court's findings except for the findings that Saldaño forfeited his competency claim by failing to raise it on direct review. *Ex parte Saldano*, No. WR-41,313-04, 2008 WL 4727540, at \*1 (Tex. Crim. App. Oct. 29, 2008) (per curiam) (not designated for publication). Saldaño filed a second petition in state court on October 30, 2007, claiming ineffective assistance of counsel for failure to preserve issues related to *Lagrone*; the TCCA denied this petition as an abuse of the writ. *Ex parte Saldano*, No. WR-41,313-03, 2008 WL 152732, at \*1 (Tex. Crim. App. Jan. 16, 2008) (per curiam) (not designated for publication).

Saldaño filed his federal habeas petition on October 26, 2009. He raised fifteen claims, including ineffective assistance of counsel, incompetency to stand trial, and claims related to the trial court's application of *Lagrone* and Texas's future dangerousness inquiry as well as the trial court's failure to hold a competency hearing. The district court denied relief on all grounds but dismissed without prejudice Saldaño's claim that he may not be executed on account of present incompetency. The court also declined to issue a COA on any of Saldaño's claims.

## II. STANDARD OF REVIEW

Saldaño's habeas petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a federal court may not grant habeas relief to a state prisoner whose claim was adjudicated on the merits in state court unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established

Federal law" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a state prisoner may appeal a district court's denial of his habeas petition, he must first obtain a COA. 28 U.S.C. § 2253(c)(1). The court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The required substantial showing of the denial of a constitutional right must have some footing in the law." *Ruiz v. Davis*, 850 F.3d 225, 228 (5th Cir.), *cert. dismissed*, 137 S. Ct. 1393 (2017).

The Supreme Court has recently cautioned that "[t]he COA inquiry . . . is not coextensive with a merits analysis." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). If the district court dismisses a claim on procedural grounds, a COA should only issue if (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where the petitioner faces the death penalty, any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015)).

No. 16-70025

# III. DISCUSSION

## A.  *Lagrone* Issues

The first three issues raised on appeal concern the state trial court's application of *Lagrone*. On direct appeal, the TCCA found that Saldaño failed to preserve his *Lagrone* claims by not making contemporaneous objections. *Saldano*, 232 S.W.3d at 88. Accordingly, the district court held that these claims are procedurally barred. The district court also found that Saldaño's *Lagrone* claims "involve nothing more than the application of state law."

Saldaño first challenges the district court's finding that his *Lagrone* claims are procedurally barred. Second, Saldaño argues that the trial court's application of *Lagrone* violated his Fifth and Sixth Amendment rights, an issue that the district court did not address on the merits. Third, Saldaño argues that the district erred in finding that his *Lagrone* claims involve nothing more than the application of state law. At the COA stage, all three of these issues hinge on whether Saldaño "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This he has failed to do.

We address Saldaño's Sixth Amendment claim first. Saldaño argues that the trial court violated the Sixth Amendment when it failed to inform defense counsel about the scope of the state's *Lagrone* examination. This claim is based on *Powell v. Texas*, 492 U.S. 680 (1989) (per curiam). There, the trial court ordered a psychiatric examination to determine the defendant's competency and sanity. *Id.* at 681. The state later used evidence from this examination to show future dangerousness. *Id.* at 682. The Court held that this was error because defense counsel was not informed that the examination would be used for this purpose. *Id.* at 686. Accordingly, "the evidence of future dangerousness was taken in deprivation of petitioner's right to the assistance of counsel" under the Sixth Amendment. *Id.* (citing *Satterwhite v. Texas*, 486 U.S. 249 (1988); *Estelle v. Smith*, 451 U.S. 454 (1981)). Here, however, *Powell* is

9

inapposite because defense counsel was clearly aware of the potential scope of a *Lagrone* examination. Counsel noted at the pretrial hearing that a psychiatric examination by the state "could actually be used against him at trial. Faced with that possibility, we can't have . . . our defendant examined for the purposes of this pretrial motion. It's just a risk that we can't run." Moreover, the judge later clarified that Dr. Peccora's testimony at trial "would probably open everything up," meaning the state's "witness would be entitled to testify about anything relevant to [Saldaño's] mental state, including future dangerousness." Thus, reasonable jurists would not debate that Saldaño has failed to state a valid claim of the denial of his Sixth Amendment right to effective assistance of counsel.

Saldaño's Fifth Amendment claim challenges the trial court's refusal to limit the scope of the *Lagrone* examination. It is well-established that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Smith*, 451 U.S. at 468. But "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase." *Id.* at 472. "If a defendant requests an examination on the issue of future dangerousness or presents psychiatric evidence at trial, the defendant may be deemed to have waived the fifth amendment privilege." *Vanderbilt v. Collins*, 994 F.2d 189, 196 (5th Cir. 1993). Nonetheless, "testimony based on a court-ordered psychiatric evaluation is admissible only for a 'limited rebuttal purpose.'" *Kansas v. Cheever*, 134 S. Ct. 596, 603 (2013) (quoting *Buchanan v. Kentucky*, 483 U.S. 402, 424 (1987)).

Here, Saldaño intended to offer Dr. Peccora's testimony in support of two legal arguments made in a pretrial motion: (1) the future dangerousness inquiry was unconstitutional as applied to Saldaño; and (2) the state should

not be able to use evidence of Saldaño's misbehavior on death row to show future dangerousness. Defense counsel did not intend to offer this testimony at the trial itself. The trial court held that under *Lagrone*, the state must have an opportunity to rebut Dr. Peccora's testimony by having its own expert examine Saldaño.[2] The trial court also indicated that the state would be able to use the *Lagrone* examination in the trial itself to show future dangerousness. So defense counsel opted not to submit Saldaño to a psychiatric examination by the state, and Dr. Peccora was unable to testify in support of Saldaño's pretrial motion.

The trial court may have erred in suggesting that submitting to a *Lagrone* examination for purposes of the pretrial motion would open up the issue of Saldaño's mental state at the trial itself. A state may not use evidence from a compelled psychiatric examination for any purpose whatsoever because "[s]ubmitting to a psychiatric or psychological examination does not itself constitute a waiver of the fifth amendment's protection." *Battie v. Estelle*, 655 F.2d 692, 702 (5th Cir. 1981); *see also Lagrone*, 942 S.W.2d at 611 (noting that "the defendant has not actually waived his Fifth Amendment rights until he has actually presented expert testimony on the issue of future dangerousness at trial"). Instead, "testimony based on a court-ordered psychiatric evaluation is admissible only for a 'limited rebuttal purpose.'" *Cheever*, 134 S. Ct. at 603 (quoting *Buchanan*, 483 U.S. at 424). The scope of a Fifth Amendment waiver is also "limited to the issue raised by the defense." *Williams v. Lynaugh*, 809 F.2d 1063, 1068 (5th Cir. 1987) (citing *Vardas v. Estelle*, 715 F.2d 206, 209–10 (5th Cir. 1983)). If Saldaño had not introduced psychiatric testimony at trial

---

[2] We have previously held that requiring a defendant "to undergo a psychiatric examination as a condition upon his offering psychiatric evidence" does not violate the Fifth Amendment. *United States v. Hall*, 152 F.3d 381, 400 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000).

(again, he had no intention to do so), then the state would have nothing to rebut. Accordingly, merely submitting to the *Lagrone* examination may not have opened up the issue of Saldaño's mental state at trial.

Nevertheless, Texas offers an additional reason to reject Saldaño's constitutional claims: the trial court's error, if any, was harmless. Under the "actual prejudice" test set out in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), habeas "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict,'" *Davis v. Ayala*, 135 S. Ct. 2187, 2197–98 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). "There must be more than a 'reasonable possibility' that the error was harmful." *Id.* (quoting *Brecht*, 507 U.S. at 637).

Texas argues that the trial court's *Lagrone* rulings were harmless "because Dr. Peccora's testimony would not have led to a different ruling on Saldaño's pretrial motion." We find that all reasonable jurists would agree. Had he testified, Dr. Peccora would have attributed Saldaño's bad acts while on death row to his mental deterioration, which in turn he would have attributed to the isolation of death row itself. This testimony was not absolutely critical to Saldaño's motion; Saldaño presented another witness— Susan Perryman-Evans—who also suggested that Saldaño's bad acts were caused by the severe isolation of death row. Additionally, Dr. Peccora, having treated Saldaño from 1997 or 1998 to 2001, could offer only a snapshot of Saldaño's mental health. As a state psychiatrist noted in his November 12, 2004 affidavit, a psychiatric evaluation from 1996 indicated that Saldaño suffered from an antisocial personality disorder even before his time on death row. The state could have used this fact to rebut Dr. Peccora's testimony. Finally, the claims made in Saldaño's pretrial motion, which are essentially identical to the future dangerousness issues discussed below, lacked legal

support. We find that jurists of reason would agree that there is no reasonable probability of a different result had the trial court properly limited the scope of a *Lagrone* examination. Thus, reasonable jurists would not debate that the trial court's error was harmless and that Saldaño has failed to state a valid claim of the denial of his Fifth Amendment right against self-incrimination. We deny a COA on Saldaño's first three issues.

## B.    Future Dangerousness Issues

Saldaño's fourth, fifth, and sixth issues all relate to Texas's future dangerousness inquiry. As to Saldaño's fourth issue, he claims that "[i]t violates basic notions of fairness for a State to impose a death sentence tainted with racist testimony, battle for eight years to prevent its being set aside while the prisoner mentally decompensates in severe isolation, and then to subject the now mentally ill defendant to a new death penalty sentencing where the key issue is the defendant's future dangerousness." Although this was one of the grounds upon which Saldaño's pretrial motion (discussed above) was based, Saldaño failed to raise this claim before the district court. Thus, we find that it is waived. *See Johnson v. Quarterman*, 483 F.3d 278, 288 (5th Cir. 2007).

On the merits, we note that Saldaño cites no applicable law in support of his fourth claim. He merely analogizes this case to other situations, such as the forced administration of antipsychotic drugs, *see Riggins v. Nevada*, 504 U.S. 127 (1992), and the state's failure to provide a speedy trial, *Doggett v. United States*, 505 U.S. 647 (1992). These analogies fall short of "[t]he required substantial showing of the denial of a constitutional right," which "must have some footing in the law." *Ruiz*, 850 F.3d at 228. Additionally, Saldaño's argument against a punishment retrial flies in the face of the well-established rule that the government may retry persons whose convictions have been overturned due to constitutional error in prior proceedings. *United States v. Tateo*, 377 U.S. 463, 468 (1964). We deny a COA on Saldaño's fourth issue.

No. 16-70025

As to Saldaño's fifth issue, he claims that Texas's future dangerousness inquiry is unconstitutionally vague in his case. The district court rejected this claim on the merits. The district court noted, and Saldaño concedes, that this Court has upheld Texas's future dangerousness special issue against facial attacks. *See, e.g., Scheanette v. Quarterman*, 482 F.3d 815, 827–28 (5th Cir. 2007); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005). Moreover, Saldaño's challenge focuses on how Texas law is unfair rather than explaining how Texas law is vague. As the district court found, "whether it was fair for the jury to consider [evidence of bad acts on death row] has nothing to do with whether the statute is unconstitutionally vague." We deny a COA on Saldaño's fifth issue.

As to Saldaño's sixth issue, he articulates a fruit of the poisonous tree argument. He argues that admitting evidence of Saldaño's bad acts on death row violated the Fourteenth Amendment because this evidence "was obtained through the State's own misconduct"—namely, the prosecution's use of racist testimony to sentence him to death.[3] The district court found that this claim (like the *Lagrone* claims discussed above) is procedurally barred and involves nothing more than the application of state law. Even if reasonable jurists could disagree on the district court's procedural holdings, reasonable jurists would not debate that Saldaño's sixth claim fails on the merits. Saldaño analogizes this case to the Fourth Amendment exclusionary rule, *see Wong Sun v. United*

---

[3] Separately, Saldaño suggests that it was error to reveal that Saldaño's bad acts were committed *on death row*. But Saldaño did not raise this claim below. He did point out that "[a]llowing the jury to hear of his incarceration on Death Row and his conduct therefrom is the equivalent of allowing the jury to hear of an invalid prior conviction," but did so in connection with the argument that admitting evidence of his bad acts while on death row was prejudicial. Because Saldaño did not claim that allowing the jury to hear of his prior sentence of death was error in and of itself, we find that this argument is waived on appeal. *See Johnson*, 483 F.3d at 288. Moreover, we note that defense counsel, over the state's objection, chose to introduce Saldaño's presence on death row to the jury.

*States*, 371 U.S. 471 (1963), but points to no court that has extended the exclusionary rule to this context. And Saldaño's discussion of Texas Rule of Evidence 403 is neither tethered to any federal constitutional right nor supported by Texas state law. Accordingly, while Saldaño's argument sounds in constitutional principles, it has no firm basis in the law. We deny a COA on Saldaño's sixth issue.

## C.    Competency

Saldaño's seventh issue pertains to his competency to stand trial and the trial court's failure to hold a competency hearing. The state habeas court found that Saldaño was competent to stand trial and that the trial court was not obligated to hold a competency hearing. The district court agreed that the trial court was not obligated to hold a competency hearing, and held that the state habeas court's finding on Saldaño's competency was reasonable.

It is axiomatic that "the Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). A person lacks mental competency if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Additionally, a trial judge must sua sponte hold a competency hearing "[w]here the evidence raises a '*bona fide* doubt' as to a defendant's competence to stand trial." *Pate v. Robinson*, 383 U.S. 375, 385 (1966). "In determining whether there is a 'bona fide doubt' as to the defendant's competence," a trial court should consider "(1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency." *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000). "[E]ven one of these factors standing alone may, in some circumstances, be sufficient" to raise a bona fide doubt. *Drope*, 420 U.S. at 180.

Here, as the district court and state habeas court discussed, several facts support an inference of competency. First, two psychiatrists examined Saldaño a total of three times during the trial and found him competent every time. Second, prison records show that Saldaño was examined by a number of psychiatrists while on death row; some of these psychiatrists found that Saldaño was malingering, i.e., his psychotic symptoms were faked in order to obtain drugs. Third, the trial judge indicated near the end of the trial, after interacting with Saldaño for several weeks, that he had no reason to believe Saldaño was incompetent.

At the same time, ample evidence supports an inference of incompetency. For example, Saldaño's repeated masturbation in the courtroom, refusal to wear nonprison clothes, lack of attention during voir dire, laughter during testimony, and rocking back and forth in his chair suggest that he may not have understood the nature of the proceedings. Saldaño's broken and sometimes incoherent speech suggests that he may not have been able to communicate effectively. Indeed, one of Saldaño's own trial attorneys, John Tatum, stated in an affidavit that Saldaño lacked sufficient ability to consult with counsel and did not understand the proceedings. Juan Carlos Vega, an Argentine attorney who attended the trial, agreed that Saldaño was incompetent to stand trial. Vega also noted that during his personal interview with Saldaño in jail, Saldaño's "words were incongruous and every three minutes he would say: 'May the Lord be welcome.'" Additionally, Saldaño had a long history of irrational behavior, including eating his own feces and masturbating in public. Joe MacLoughlin, an employee of the Argentine consulate who met with Saldaño on numerous occasions, noted Saldaño's mental deterioration during his time on death row. According to MacLoughlin, Saldaño appeared mentally stable in 1999 and 2000; starting in 2001, however, Saldaño began to exhibit "thought disorders and irrational speech" and other

16

"signs of mental illness and apparent psychotic behavior." Some TDCJ doctors even diagnosed Saldaño with schizophrenia or schizoaffective disorder. Based on these records as well as personal interviews, Dr. Cantu expressed the opinion that Saldaño suffered from psychosis and was incompetent to stand trial in 2004.

In determining that the trial court was not obligated to hold a competency hearing, the state habeas court focused on two facts: (1) two experts who examined Saldaño during the trial deemed him competent; and (2) the trial judge stated he had no reason to believe Saldaño was incompetent. There are several potential issues with the state habeas court's analysis. First, the results of the psychiatric examinations upon which the court relied are not in the record. Indeed, as discussed above, it is possible that these psychiatrists did not even examine Saldaño in person. Second, the state habeas court essentially disregarded prior diagnoses of psychosis, holding that these diagnoses "do not, alone, require a competency hearing." The court also found these diagnoses "specifically discredited" by other TDCJ doctors, but did not explain why it regarded some diagnoses as superior to others. Third, the state habeas court regarded Saldaño's courtroom behavior as "inappropriate . . . but not bizarre" without explaining why the distinction mattered. Finally, the state habeas court appeared to ignore Saldaño's history of irrational behavior. Reasonable jurists would debate whether the state habeas court's factual findings were unreasonable in light of the evidence, and whether the court unreasonably applied *Pate* and *Drope* by not weighing Saldaño's history of irrational behavior, demeanor at trial, and prior diagnoses of psychosis against the opinions of the trial judge and the experts who examined Saldaño during trial.

In determining that Saldaño was competent, the state habeas court found that Saldaño could consult with counsel and understand the nature of

the proceedings. The numerous instances of Saldaño's incoherent or disordered speech, his strange behavior, and the affidavits of several individuals who interacted with Saldaño around the time of trial belie the court's findings. Reasonable jurists would debate whether the state court's factual findings are unreasonable in light of this evidence.

Accordingly, we grant a COA on Saldaño's seventh issue.

**D.     Ineffective Assistance of Counsel**

Saldaño's final issue relates to ineffective assistance of trial counsel. Saldaño argues that trial counsel was deficient in (1) failing to present mitigating evidence to the jury, (2) failing to preserve for appellate review objections to the trial court's application of *Lagrone*, and (3) failing to request a competency hearing.

The Sixth Amendment guarantees a criminal defendant's right to counsel. U.S. Const. amend. VI. To establish ineffective assistance of counsel, Saldaño must show both that "counsel's performance was deficient" and that this "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, counsel's performance was only deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To show prejudice under the second prong of the *Strickland* test, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

18

No. 16-70025

### *1. Failure to Introduce Mitigating Evidence*

With regard to mitigating evidence, Saldaño argues that trial counsel should have (a) introduced mental health evidence at trial, (b) put Saldaño's mother, Lidia Guerrero, on the stand, and (c) moved for a continuance so that Saldaño's sister Ada could testify,[4] or in the alternative deposed her.[5]

The state habeas court found that trial counsel "made a reasonable strategic decision" not to introduce evidence of Saldaño's mental deterioration because doing so would allow the state to introduce evidence suggesting that Saldaño was merely malingering. The state could point to diagnoses of antisocial personality disorder made by treating physicians as well as observations of manipulative, drug-seeking behavior. Trial counsel Rick Harrison further explained that they did not put Guerrero on the stand because she intended to testify that Saldaño was mentally ill—again opening the door to the state's evidence of malingering. Reasonable jurists would agree that trial counsel's choice not to introduce mental health evidence or put Guerrero on the stand was reasonably strategic and therefore not deficient under *Strickland*.

The state habeas court found that Ada Saldaño's testimony was not clearly mitigating. Ada could have testified about Saldaño's troubled youth, but Saldaño does not explain how Ada's testimony would bear on the future dangerousness inquiry. Jurists of reason would agree there is no reasonable probability that Ada's testimony would have changed the jury's verdict.

---

[4] At the time, Ada was pregnant and unable to travel to the United States in order to testify at her brother's punishment retrial.

[5] Saldaño also suggests that the trial counsel should have put an Argentine consular employee, Joe MacLoughlin, on the stand. But Saldaño did not make this argument before the district court; accordingly, we find that it is waived. Moreover, it is unclear what MacLoughlin would have testified about, other than Saldaño's mental decline.

## 2. *Failure to Preserve* Lagrone *Issues for Appellate Review*

Saldaño next argues that trial counsel was ineffective in failing to preserve *Lagrone* issues for appellate review. The district court held that this claim is procedurally defaulted because the TCCA dismissed the claim as an abuse of the writ. *Saldano*, 2008 WL 152732. As discussed above, reasonable jurists would not debate that Saldaño's *Lagrone* claims are largely meritless. And reasonable jurists would agree that the one claim that does have merit— his Fifth Amendment claim—fails because the trial court's error was harmless. Thus, jurists of reason would agree there is no reasonable probability that preserving the *Lagrone* issues for appellate review would have changed the outcome of this case.

## 3. *Failure to Request a Competency Hearing*

Finally, Saldaño argues that trial counsel was ineffective in failing to request a competency hearing. The state habeas court found that requesting a competency hearing would have been futile because two experts opined that Saldaño was competent during trial. The district court agreed, and also noted that trial counsel appropriately and sufficiently investigated Saldaño's competency.

Trial counsel has a duty to investigate a defendant's mental health if "he has reason to believe that the defendant suffers from mental health problems." *Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004); *see also Bouchillon v. Collins*, 907 F.2d 589, 595–97 (5th Cir. 1990) (counsel was ineffective in failing to investigate defendant's competency in light of defendant's known history of institutionalization). The Third Circuit has held that where "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency," counsel is deficient if he fails to request a competency hearing. *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001); *accord Burt v. Uchtman*, 422 F.3d 557, 569 (7th Cir. 2005) (concluding "that in light

of the overwhelming evidence of [defendant's] psychological problems and heavy medication, counsel's failure to request a new competency hearing was deficient performance"). But "[t]here can be no deficiency in failing to request a competency hearing where there is no evidence of incompetency." *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989). Moreover, "the Sixth Amendment does not require counsel to continue searching until they find an expert willing to provide more beneficial testimony on their behalf." *Dowthitt v. Johnson*, 230 F.3d 733, 745 n.10 (5th Cir. 2000).

Here, Saldaño's history of irrational behavior, his demeanor at trial, and Dr. Peccora's report gave defense counsel reason to believe Saldaño suffered from mental health problems. Trial counsel did investigate these problems by having Saldaño examined by mental health experts three times during the trial, and these experts deemed Saldaño competent. Based on these facts, Texas argues that counsel's failure to request a competency hearing was not deficient. But the results of the psychiatric examinations commissioned during trial are not in the record, and it is possible that the psychiatrists did not even examine Saldaño in person. Additionally, at least one of the trial lawyers— John Tatum—believed that Saldaño was incompetent to stand trial. And ample evidence, from prior diagnoses of psychosis to Saldaño's behavior at trial, supported this belief. In light of this evidence, there may have been "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency." *Jermyn*, 266 F.3d at 283. We find that reasonable jurists would debate the state habeas court's finding that trial counsel's failure to request a competency hearing in light of this evidence was not deficient.

To show prejudice, Saldaño must demonstrate a reasonable probability that the trial court would have found him incompetent had counsel requested a competency hearing. *Felde v. Butler*, 817 F.2d 281, 282 (5th Cir. 1987); *accord Burt*, 422 F.3d at 567 ("Where a defendant argues that he should have received

a fitness hearing, we have interpreted the prejudice inquiry as asking whether there is a reasonable probability the defendant would have been found unfit had a hearing been held."). We have already found that reasonable jurists would debate the state habeas court's finding that Saldaño was competent. Likewise, reasonable jurists would debate whether there is a reasonable probability that the trial court would have found Saldaño incompetent had counsel requested a competency hearing. We grant a COA on Saldaño's eighth issue, though only with respect to counsel's failure to request a competency hearing.

## IV. CONCLUSION

For the foregoing reasons, we GRANT a COA on Saldaño's competency claim—including both whether he was incompetent to stand trial and whether the trial court should have held a competency hearing—and his claim of ineffective assistance with respect to counsel's failure to request a competency hearing. Counsel for Saldaño should submit a merits brief on these two issues within 30 days. Counsel for the state should respond within 15 days thereafter. We DENY a COA on Saldaño's other claims.